190 P.3d 516 (2008)
STATE of Washington, Respondent,
v.
Ryan Michael JORDAN, Defendant.
In re the Matter of Michael Nagle, Appellant.
Nos. 36027-6-II, 36037-3-II, 36047-1-II.
Court of Appeals of Washington, Division 2.
August 19, 2008.
*518 Michael Nagle, Appearing Pro Se.
J. Andrew Toynbee, Thurston County Prosecuting Attorney's Office, Olympia, WA, for Respondent.
QUINN-BRINTNALL, J.
¶ 1 On January 29, 2007, without prior notice to the prosecution or the Thurston County Superior Court, defense counsel Michael Nagle did not appear to represent his client, Ryan Michael Jordan, at a scheduled pretrial hearing on three felony cases. The same day, without notice to Nagle, the trial court entered an order to show cause in which it found Nagle in contempt and sentenced him to serve two days in the Thurston County Jail or pay a $150 fine ($.50 for each case). Nagle appeals the contempt finding, arguing that (1) there was no factual basis for such finding and (2) the trial court exceeded its authority in entering the order without a hearing as required under RCW 7.21.050. Because the January 29 order violated constitutional and statutory procedural protections prerequisite to a valid contempt finding, we vacate the trial court's contempt orders and dismiss the sanctions imposed.

FACTS
¶ 2 On January 29, 2007, Jordan's appointed counsel, Nagle, was scheduled to appear for Jordan in Thurston County Superior Court at a pretrial omnibus hearing on three criminal cases. When the trial court called the cases for a hearing, Nagle was not present. Without notice to Nagle, the trial court entered an order to show cause in which it found Nagle in contempt of court and sentenced him to serve two days in jail or pay a fine of $150 ($50 per case). In addition, the trial court ordered Nagle to appear at a hearing on February 1, 2007, to show cause why he should not be found in contempt. Nagle filed a written response. At the February hearing, Nagle admitted that he had made a mistake by failing to appear at the January 29 pretrial matters and offered the following explanation:[1]
[T]his was my mistake.... I thought the case had transferred into Drug Court and that we no longer had any hearing on the regular criminal calendar.
. . . .
... I probably should have double checked to make sure that [the drug court acceptance] actually went through.
Report of Proceedings (RP) at 4. During the colloquy, the trial court again offered Nagle an opportunity to further explain his absence on January 29. Nagle repeated his previous explanation and apologized to the court for his mistake.[2]
¶ 3 The trial court noted in its oral ruling that Nagle knew on January 29 that the drug *519 court had not been accepting any new offenders. And it stated:
It was your assumption that [Jordan] would be accepted, that he would be placed on a waiting list, and that because of that, the hearing on Monday would go off? ... [T]he kind of assumptions that you made make it difficult, if not impossible, for this Court to conduct its normal business."
RP at 13-17. The trial court reaffirmed its earlier contempt finding and found that, because he was otherwise able to appear and had simply assumed there would be no hearing, Nagle had not shown good cause for his failure to appear on January 29. The trial court amended the jail sanction, however, and imposed a $150 penalty, $50 for each of the three cases scheduled for the hearing that Nagle failed to attend. Nagle timely appeals.
¶ 4 This appeal requires us to review the trial court's January 29 contempt order and determine whether the trial court abused its discretion when it found Nagle in contempt and sentenced him to two days in jail. We hold that it did.

ANALYSIS

CONTEMPT OF COURT
¶ 5 Nagle argues that, unless the State has filed criminal contempt charges, he cannot be held in contempt for failing to appear at a hearing without notice to the trial court or opposing counsel. The State argues that a criminal charge is unnecessary and that, under RCW 7.21.050,[3] the trial court has inherent authority to control the cases before it and accordingly establishes a procedure for summary contempt proceedings in such situations. The parties unquestionably raise important issues that require clarification and resolution. See In re Dependency of A.K., 162 Wash.2d 632, 652, 174 P.3d 11 (2007) ("A juvenile court commissioner possesses the inherent power to impose punitive or remedial sanctions for contempt of court, whether that contempt occurs in or outside of the courtroom. However, before exercising that power, the court must specifically find all statutory contempt remedies inadequate."); In Re Interest of Rebecca K., 101 Wash.App. 309, 317, 2 P.3d 501 (2000) (confinement in juvenile detention without a purge condition remains a punitive sanction requiring criminal due process, regardless of the legislature's "remedial" label. And "[c]riminal contempt proceedings must be initiated by a criminal information filed by the State ... to comply with due process.").
¶ 6 But we do not reach these issues in this case because the trial court here found Nagle in contempt and sentenced him to serve two days in jail without notice or opportunity to be heard. On January 29, when the trial court found Nagle in contempt, it had no evidence indicating why Nagle had not appeared for Jordan's pretrial hearings; he could have been in an accident or had a medical emergency. For the reasons we discuss below, the trial court's contempt finding not only failed to comply with RCW 7.21.050, but also violated Nagle's constitutional due process rights. The show cause hearing, which was held after the trial court found Nagle in contempt and sentenced him to two days in jail or fine in lieu of jail, did not remedy these violations.
*520 ¶ 7 A trial court may impose a contempt sanction using its inherent constitutional authority or under statutory provisions found in Title 7 RCW. A.K., 162 Wash.2d at 645, 652, 174 P.3d 11. A finding of contempt and punishment, including sanctions, lies within the sound discretion of the trial court. State v. Dugan, 96 Wash.App. 346, 351, 979 P.2d 885 (1999). We will not disturb a trial court's contempt ruling absent an abuse of that discretion. Dugan, 96 Wash.App. at 351, 979 P.2d 885. A trial court abuses its discretion when it exercises its discretion in a manifestly unreasonable manner or bases its decision on untenable grounds or reasons. State v. Berty, 136 Wash.App. 74, 83-84, 147 P.3d 1004 (2006) (citing State v. Powell, 126 Wash.2d 244, 258, 893 P.2d 615 (1995)).
¶ 8 Generally, there are two types of contempt: civil[4] and criminal. Berty, 136 Wash.App. at 84, 147 P.3d 1004. Washington's contempt statutes define contemptuous[5] conduct but they do not distinguish between civil and criminal contempt. State v. Hobble, 126 Wash.2d 283, 292, 892 P.2d 85 (1995). Instead, the statutes distinguish between punitive and remedial sanctions for contempt. RCW 7.21.010, .030, .040; In re Marriage of Didier, 134 Wash.App. 490, 500, 140 P.3d 607 (2006), review denied, 160 Wash.2d 1012, 161 P.3d 1026 (2007). A "punitive sanction" is "a sanction imposed to punish a past contempt of court for the purpose of upholding the authority of the court." RCW 7.21.010(2). A "remedial sanction" is "a sanction imposed for the purpose of coercing performance when the contempt consists of the omission or refusal to perform an act that is yet in the person's power to perform." RCW 7.21.010(3). Criminal contempt requires the extension of the constitutional safeguards afforded to other criminal defendants, including the filing of a criminal charge. Didier, 134 Wash.App. at 500, 140 P.3d 607 (citing In re Interests of M.B., 101 Wash.App. 425, 438-40, 3 P.3d 780 (2000)).
No court ... may impose criminal contempt sanctions unless the contemnor has been afforded the same due process rights afforded other criminal defendants.... These due process rights include the initiation of criminal action by filing of charges by the prosecutor, assistance of counsel, privilege against self-incrimination, and proof beyond a reasonable doubt.
In re Interest of J.L., 140 Wash.App. 438, 448, 166 P.3d 776 (2007) (citing In re Pers. Restraint of King, 110 Wash.2d 793, 800, 756 P.2d 1303 (1988)); State v. A.L.H., 116 Wash. App. 158, 164, 64 P.3d 1262 (2003); M.B., 101 Wash.App. at 439-40, 3 P.3d 780.
¶ 9 In this case, the trial court did not specify the basis for its contempt authority referring only to "direct contempt." We agree with the State, however, that it appears the trial court was attempting to use its summary contempt authority under RCW 7.21.050(1). Nagle argues that summary proceedings for contempt can only occur for disruptive behavior in the courtroom and his absence from the hearing was outside of the court's presence and, thus, the trial court lacked authority to summarily impose sanctions against him for his non-appearance.
¶ 10 RCW 7.21.050(1) provides in pertinent part: "The person committing the contempt of court shall be given an opportunity to speak in mitigation of the contempt unless compelling circumstances demand otherwise." (Emphasis added.) The legislature's use of the term "shall" is mandatory and a court acting without having complied with the statutory mandate does so without authority. State v. Martin, 137 Wash.2d 149, 154-55, 969 P.2d 450 (1999). Here, the trial court's imposition of two days in jail occurred before Nagle was provided an opportunity to explain or mitigate the sanction; thus, the contempt sanction was punitive and the error *521 could not be cured by the show cause hearing conducted after the sanction was imposed.[6]
¶ 11 Moreover, an attorney absenting himself from the courtroom when his case is called for trial does not commit contempt in the court's presence. State v. Winthrop, 148 Wash. 526, 531, 269 P. 793 (1928). In State v. Hatten, 70 Wash.2d 618, 425 P.2d 7 (1967), before ch. 7.21 RCW was adopted in 1989, our Supreme Court suggested in dicta that a court may be able to enter a finding of contempt for counsel's absence under certain circumstances:
One aspect of the contempt, the fact of absence, is, of course, obvious to the court, but the explanation of the absence is not known and the facts may be such as to excuse the apparent contempt. Consequently, the contemner is entitled to be heard and produce his witness or other evidence.

70 Wash.2d at 621, 425 P.2d 7 (emphasis added). See also Hobble, 126 Wash.2d at 300, 892 P.2d 85 (if a contempt order is punitive, the contemnor is entitled to the opportunity to be tried by a jury (criminal)); J.L., 140 Wash.App. at 448, 166 P.3d 776.
¶ 12 But contrary to dicta in Hatten, the trial court here found Nagle in contempt and sentenced him to two days in jail without providing Nagle an opportunity to explain his absence. It was only after it had made its contempt finding and imposed the sanctions that it ordered Nagle to appear and show cause.
¶ 13 We recognize the trial court's need to have effective tools to manage its courtroom and to expedite the resolution of cases. But summarily finding an attorney in contempt for nonappearance is not an available tool. The trial court here denied Nagle any hearing or opportunity for trial before finding him in contempt and sentencing him to two days in jail. In doing this, it failed to comply with RCW 7.21.050(1) and it also violated Nagle's constitutional due process rights to notice and an opportunity to be heard. "A party charged with contempt has the same right to be heard in his defense as a party charged with any other offense where life, liberty, or property is involved." State v. Nicoll, 40 Wash. 517, 524, 82 P. 895 (1905) (contempt committed out of the court's presence).

ATTORNEY FEES
¶ 14 Nagle requests that we award him attorney fees on appeal contending that, while "[n]o blame attaches to counsel for the State," he should, nevertheless, be awarded his attorney fees because, under RAP 18.9, had the trial court not held him in contempt, an appeal from that order would have been frivolous. Br. of Appellant at 9.
¶ 15 RAP 18.1 requires that attorney fee requests be supported by argument and citation to authority. Austin v. U.S. Bank of Wash., 73 Wash.App. 293, 313, 869 P.2d 404, review denied, 124 Wash.2d 1015, 880 P.2d 1005 (1994). Nagle does not cite any applicable law supporting an award of attorney fees and his reasoning is unpersuasive.
¶ 16 Accordingly, because the contempt proceeding failed to comply with RCW 7.21.050 and violated Nagle's constitutional due process rights, we vacate the trial court's contempt orders and dismiss the sanctions imposed.
We concur. HOUGHTON, P.J., and BRIDGEWATER, J.
NOTES
[1] In his written response, Nagle attached a copy of an electronic mail (e-mail) to support his argument. In the e-mail, Nagle expressed some doubt as to whether his client would be accepted into the drug court because of his client's mental health history.
[2] Nagle's client attended the drug court orientation on January 19, 2007, but was ultimately rejected from drug court participation. During oral arguments before this court, counsel related that, in Thurston County, when a defendant is accepted into drug court, his appointed counsel turns over all files to a single designated drug court defense counsel. According to Nagle, no notice of substitution of counsel or other formal motion is filed with the court. We note that the procedure described appears inconsistent with court rules and rules of professional conduct. See CrR 3.1(e) (counsel is not permitted to withdraw from a case "except upon written consent of the court, for good and sufficient reason shown"); CrR 3.1(b)(2) (a "lawyer initially appointed shall continue to represent the defendant through all stages of the proceedings unless a new appointment is made by the court following withdrawal of the original lawyer pursuant to section (e) because geographical considerations or other factors make it necessary"). A lawyer has a duty to carry through to conclusion all matters undertaken for a client, unless the lawyer withdraws. In re Disciplinary Proceeding Against Miller, 99 Wash.2d 695, 699-700, 663 P.2d 1342 (1983).
[3] RCW 7.21.050 provides:

(1) The judge presiding in an action or proceeding may summarily impose either a remedial or punitive sanction authorized by this chapter upon a person who commits a contempt of court within the courtroom if the judge certifies that he or she saw or heard the contempt. The judge shall impose the sanctions immediately after the contempt of court or at the end of the proceeding and only for the purpose of preserving order in the court and protecting the authority and dignity of the court. The person committing the contempt of court shall be given an opportunity to speak in mitigation of the contempt unless compelling circumstances demand otherwise. The order of contempt shall recite the facts, state the sanctions imposed, and be signed by the judge and entered on the record.
(2) A court, after a finding of contempt of court in a proceeding under subsection (1) of this section may impose for each separate contempt of court a punitive sanction of a fine of not more than five hundred dollars or imprisonment in the county jail for not more than thirty days, or both, or a remedial sanction set forth in RCW 7.21.030(2). A forfeiture imposed as a remedial sanction under this subsection may not exceed more than five hundred dollars for each day the contempt continues.
[4] Civil contempt may be initiated either under Title 7 RCW or under the long-exercised, inherent power of constitutional courts. The power to censure contemptuous behavior is inherent in a court of general jurisdiction. In re Marriage of Nielsen, 38 Wash.App. 586, 587, 687 P.2d 877 (1984) (citing State v. Estill, 55 Wash.2d 576, 349 P.2d 210 (1960)); State v. Heiner, 29 Wash.App., 193, 198, 627 P.2d 983, review denied, 97 Wash.2d 1009 (1981).
[5] Ch. 7.21 RCW.
[6] The opportunity to speak in mitigation of the contempt must be given after the court makes the finding of contempt but prior to the imposition of sanctions because the right to mitigate operates as a check against potential abuse of the trial court's power to punish contempt summarily. Templeton v. Hurtado, 92 Wash.App. 847, 854-55, 965 P.2d 1131 (1998) (quoting In re Finding of Contempt in State v. Kruse, 194 Wis.2d 418, 435-36, 533 N.W.2d 819 (1995)).