**Richard E. HAWK, Petitioner-Appellant,**

v.

**Al CARDOZA, Sheriff of Solano County, et al., Respondents-Appellees.**

No. 76–3367.

United States Court of Appeals, Ninth Circuit.

May 23, 1978.

Alan L. Schlosser (argued), of San Francisco, Cal., for petitioner-appellant.

Robert F. Tyler, Deputy Atty. Gen., Sacramento, Cal., for respondents-appellees.

Before BROWNING and WALLACE, Circuit Judges, and BELLONI,* District Judge.

PER CURIAM:

Petitioner Richard Hawk was defense counsel for Juan Corona, who was convicted by a jury, after a 4½ month, heavily publicized trial of the murder of 25 farmworkers. During the trial, petitioner was cited under California's summary contempt statute, Cal. Code Civ.Pro. § 1209, 19 times for statements made in the presence of the trial judge. He was convicted and sentenced shortly after each incident, with execution of sentence deferred until the conclusion of the trial. At the end of the trial, petitioner was committed to the custody of the Solano County Sheriff without further proceedings to serve 46 days in jail and pay $2500 in fines.

Petitioner exhausted his state remedies, then filed his § 2554 habeas corpus in feder-

---

* Honorable Robert C. Belloni, United States District Judge, District of Oregon, sitting by designation.

al district court, asserting constitutional claims as to 12 convictions. The district court denied his petition on all 12, and petitioner appealed. We have jurisdiction under 28 U.S.C. § 2253. We affirm.

Petitioner attacks these contempt convictions on six grounds, four of which may be dealt with briefly. First, he argues that his acts at trial were not within the prohibitions of the California statute. The California trial judge found they were, the state appellate court affirmed, and the California Supreme Court denied review. Petitioner's due process challenge can succeed on this theory only if there was no evidence that his acts violated the state statute. *Thompson v. City of Louisville*, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960). Such was not the case here.

Secondly, petitioner claims that due process guaranteed him the right to be heard in defense and mitigation at the conclusion of the trial, even though the trial judge had given him an opportunity to explain his conduct and address the issue of punishment soon after each incident of contempt. Petitioner could have been summarily convicted and his sentence executed during the trial. He suffered nothing by the delay. He was entitled to no further process at the end of the trial. *Sacher v. U. S.*, 343 U.S. 1, 9–10, 72 S.Ct. 451, 96 L.Ed. 717 (1952).

Third, petitioner contends that the trial judge was so personally embroiled in a running controversy with petitioner that due process required another judge to adjudicate the contempt citations and impose punishment. Petitioner's comments at trial were not directed at the trial judge. The record does not show that the judge either was or was likely to be personally offended by his statements. See *Mayberry v. Pennsylvania*, 400 U.S. 455, 463–66, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971). Neither was there such a likelihood of bias or such appearance of bias as to prevent the trial judge from holding "the balance between vindicating the interests of the court and the interests of the accused". *Taylor v. Hayes*, 418 U.S.

488, 501–03, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974) *quoting Ungar v. Sarafite*, 376 U.S. 575, 588, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964). We think the trial judge did an excellent job of maintaining that balance.

Petitioner further argues that some of the contempt citations were based on an order issued by the trial judge which restricted extrajudicial statements by counsel and thereby violated the first amendment. The clear fact is that the citations were not for conduct contravening this restrictive order. That order applied to any out-of-court statements concerning the trial. It is neither apparent from the record nor plausible from the wording of the order that the contempt citations were based on it. The constitutionality of the order itself is therefore irrelevant.

Petitioner raises two other grounds which merit fuller explanation. He contends that due process requires a showing of intent to obstruct judicial proceedings and evidence that such proceedings were actually obstructed. He further maintains that the contempt citations in this case chilled effective advocacy of his client's cause and thus denied his client the right to counsel guaranteed by the sixth amendment.

Numerous cases are to be found, in this circuit and elsewhere, which add various degrees of intent to criminal contempt statutes which do not explicitly require it. See *United States v. Seale*, 461 F.2d 345, 368 (7th Cir. 1972). *In re Dellinger*, 461 F.2d 389, 400 (7th Cir. 1972); *Sykes v. United States*, 144 U.S.App.D.C. 53, 55, 444 F.2d 928, 930 (1971); *Offutt v. United States*, 98 U.S.App.D.C. 69, 232 F.2d 69, cert. denied 351 U.S. 988, 76 S.Ct. 1049, 100 L.Ed. 1501 (1956); *May Hosiery Mills v. U. S. District Court*, 64 F.2d 450, 453 (9th Cir. 1928). While none of these cases expressly relies on the Due Process Clause, we infer that fourteenth amendment due process, incorporating the first amendment, does demand some showing of intent for conviction of criminal contempt. We find reasonable and adopt the seventh circuit's statement:

. . . [A]n attorney possesses the requisite intent only if he knows or reason-

ably should be aware in view of all the circumstances, especially the heat of the controversy, that he is exceeding the outermost limits of his proper role and hindering rather than facilitating the search for truth.

*In re Dellinger, supra* at 400.

We have intimated before that the fourteenth amendment, including due process and incorporated first amendment protections, requires some sort of actual damaging effect on judicial order before one may be held in criminal contempt. *See Weiss v. Burr,* 484 F.2d 973, 979–82 (9th Cir. 1973). There conduct was found punishable which "posed significant, imminent threats to the fair administration of justice by the trial court." *Id.* at 982. This, at a minimum, is necessary to satisfy the fourteenth amendment.

Petitioner's sixth amendment argument adds weight to those just discussed. Where the contemnor is an attorney representing a criminal defendant, there is more at stake than just the attorney's right to speak freely and not to be punished criminally without findings of intent and obstruction. *Weiss, supra* at 980; *In re Dellinger, supra* at 398.

Thus petitioner's first amendment and due process rights and the sixth amendment rights of his client must be balanced against the need for order in the trial process. The need for judicial order is not fixed but must be considered in the context of each case. The length of a trial, surrounding controversy, prior warnings from the trial judge and prior conduct of the contemnor are among factors which must be considered in assessing the validity of summary contempt citations. *See Sacher, supra,* 343 U.S. at 9, 72 S.Ct. 451; *In re Dellinger, supra.*

Some of the instances of contempt challenged here, taken alone, do not seem to constitute grave threats to the administration of justice. However, in light of the length and heated setting of the trial, the trial judge's warnings to petitioner, his special orders concerning conduct at trial issued before the trial began and petitioner's

continuing conduct and repeated violations of those orders, we find the necessary evidence of intent and actual obstruction and affirm the district court's denial of the petition.