[No. 40705-8-I.   Division One.   October 26, 1998.]

ANDREW TEMPLETON, *Petitioner,* v. MICHAEL HURTADO, ET AL., *Respondents.*

---

*Neil M. Fox* of *Seattle-King County Public Defender Association*, for petitioner.

*Mark H. Sidran, City Attorney*, and *Richard E. Greene, Assistant*, for respondents.

BECKER, J. — Before imposing a sanction for direct contempt, a court must give the contemnor the opportunity to speak in mitigation of the contempt. Here, immediately upon finding the defendant in direct contempt for refusing to sign a no-contact order, the municipal court imposed a 30-day sentence. The court's failure to give the defendant an opportunity to speak in mitigation requires reversal of the sentence and a remand for resentencing. Because the order of contempt does not recite the facts, entry of written findings is also required on remand.

## FACTS

On March 24, 1997, Judge Michael Hurtado of King County Municipal Court arraigned Andrew Templeton on one count of assault and one count of interfering with the reporting of domestic violence. At the arraignment, the court granted the State's request for a no-contact order. After instructing Templeton not to have any contact with his wife, the court heard his request for release without bail. Defense counsel said that his client had income of a little over $200 and was unable to post bail. He said his client had promised to return to court and to abide by a no-

contact order. After reviewing court notes indicating a prior issuance of a no-contact order involving the same alleged victim, the court required cash bail of $1,000.

The transcript shows that after beginning another case, Judge Hurtado returned his attention to Templeton, who announced that he would not sign the order:

> Judge: Mr. Templeton, what seems to be the problem, sir?
>
> Templeton: I refuse to sign the no contact order.

The court gave Templeton an opportunity to sign the no-contact order:

> Judge: Ms. Bernard, do you want to get next to the defendant please. Ok, now, I must advise you something, what a contempt order is. A contempt order is if a person in court disobeys a court order. That is an independent criminal violation . . . 30 straight days. Ok, now. I have to give you the opportunity to sign the no contact order before I find you in contempt.
>
> Templeton: What if I don't?
>
> Judge: Pardon?
>
> Templeton: What if I don't?

At this point, the court found Templeton in contempt and immediately sentenced him to 30 days in jail:

> Judge: Ok, I find you in contempt.
>
> Templeton: I get 30 days right.
>
> Judge: Right. Ok. The court finds the defendant in contempt, sentence straight 30 days, no credit for time served, independent of any King County Jail Time.
>
> Defense: Your honor, if I could have just a moment with Mr. Templeton.
>
> Judge: No counsel, it is too late. He has had the op-

portunity to ah, ah, amend. He chose not to. Madam clerk could you put a court entry into the docket that the court found the defendant in contempt. And again, madam bailiff, make sure no credit for time served, straight 30 days. It will be consecutive, yes separate charge, consecutive to any other jail time.

Judge Hurtado signed an order of commitment, reciting the charge of contempt and the sentence imposed. Templeton appealed the contempt order to superior court. The superior court rejected Templeton's appeal, finding that the municipal court had satisfied the procedural requirements for sanctioning a direct contempt. This court granted discretionary review.

■ ■ Ordinarily, a court may impose a sanction for contempt only after notice and a hearing.[1] The exception is that when contempt is committed in the presence of the court, a judge may summarily impose either a punitive or remedial sanction.[2] In such a case, the court must give the person committing contempt an opportunity to speak in mitigation, and the order of contempt must recite the facts:

The judge presiding in an action or proceeding may summarily impose either a remedial or punitive sanction authorized by this chapter upon a person who commits a contempt of court within the courtroom if the judge certifies that he or she saw or heard the contempt. The judge shall impose the sanctions immediately after the contempt of court or at the end of the proceeding and only for the purpose of preserving order in the court and protecting the authority and dignity of the court. The person committing the contempt of court shall be given an opportunity to speak in mitigation of the contempt unless compelling circumstances demand otherwise. The order of contempt shall recite the facts, state the sanctions imposed, and be signed by the judge and entered on the record.[3]

---

[1]RCW 7.21.030(1) and RCW 7.21.040(2).

[2]RCW 7.21.050(1).

[3]*Id.*

Punishment for contempt is within the sound discretion of the trial court.[4] In reviewing a trial court's finding of contempt, an appellate court reviews the record for a clear showing of abuse of discretion.[5] Discretion is abused if it is exercised on untenable grounds or for untenable reasons.[6]

## REQUIREMENT FOR A FACTUAL RECITATION

The Order of Commitment, signed by Judge Hurtado, recites the "charge" of contempt and the 30 days sentence imposed. It does not specify the act of contempt nor does it state any facts to support the finding of contempt.

Templeton contends that the municipal court's failure to enter a written factual recitation warrants reversal of the contempt order.

■ ■ It has long been the rule that a trial court must make findings of fact setting forth the basis for its judgment of contempt in order to facilitate appellate review:

> If, as we have held, findings are necessary in the ordinary case, they ought to be more useful and necessary in a case of this character where the defendant may not only be fined but imprisoned. This court ought to know upon what specific acts the trial court held appellant to be guilty of contempt.[7]

Our Supreme Court reemphasized the importance of a factual recitation in *State v. Hobble.*[8] The order addressed in *Hobble* recited only that the contempt consisted of the appellant's failure to respond to questions propounded during trial. The court viewed this written entry as the "bare

[4]*In re Marriage of Mathews*, 70 Wn. App. 116, 126, 853 P.2d 462, *review denied*, 122 Wn.2d 1021 (1993).

[5]*In re James*, 79 Wn. App. 436, 439-40, 903 P.2d 470 (1995).

[6]*Id.* at 440.

[7]*State ex rel. Dunn v. Plese*, 134 Wash. 443, 449, 235 P. 961, 963 (1925).

[8]*State v. Hobble*, 126 Wn.2d 283, 892 P.2d 85 (1995).

minimum which could possibly suffice" to meet the factual recitation requirement.[9]

Templeton argues that the municipal court's order falls below the "bare minimum" because it does not specify the act that the court found contemptuous. He also points out that an act must be intentional to be contemptuous,[10] but the order is silent as to intent. The State suggests that the court's failure to enter written findings is harmless because the trial court's oral ruling was sufficiently clear to allow appellate review.

In light of the Supreme Court's recent decision in *State v. Head*,[11] we hold that an oral ruling does not supply an adequate basis for appellate review of an order of contempt. To protect its own authority to enforce a contempt sanction, a trial court must be sure written findings are entered, either by delegating the task to opposing counsel or writing them out personally. As stated in *Hobble*, "to avoid any question about the sufficiency of a factual recitation in an order of contempt, we advise trial courts to provide a thorough description of the relevant facts sufficient in law to show contempt."[12]

Under *Head*, a remand for entry of written findings is the appropriate remedy. In the absence of written findings, substantive review is premature. Therefore, we decline to address Templeton's further argument that the court was without authority to require him to sign the no-contact order.

## OPPORTUNITY TO SPEAK IN MITIGATION

■ Templeton contends the municipal court failed to comply with the statutory requirement to give the person committing the contempt of court the "opportunity to

[9]*Id.* at 295.

[10]RCW 7.21.010(1).

[11]*State v. Head*, 136 Wn.2d 619, 964 P.2d 1187 (1998).

[12]*State v. Hobble*, 126 Wn.2d at 295.

speak in mitigation of the contempt unless compelling circumstances demand otherwise."[13] *Hobble*, the only Washington case discussing this provision, found the requirement to be satisfied where the trial court asked the appellant if he wished to say anything, and, when he declined, the court heard counsel's argument in mitigation.[14] The State argues that the municipal court similarly complied with the requirement by giving Templeton an opportunity to sign the order after explaining the consequences of refusing to do so.

The Wisconsin Supreme Court has held that a similar Wisconsin statute affords to the contemnor a right to allocute after being found in contempt but prior to imposition of sanctions.[15] The right operates as a check to the heightened potential for abuse in the court's power to punish contempt summarily:

> The right is so basic that it will not be inferred from the record. The right must be exercised after the court has made its finding of contempt but before punishment is imposed, thereby permitting the judge to vacate the contempt order entirely or to give a more lenient sanction, after considering any mitigating factors revealed in the allocution.
>
> Contrary to the state's assertions, the allocution requirement is not satisfied when the judge, as here, requests the alleged contemnor to clarify, repeat or explain the contumacious act or remark. Rather, . . . the allocution requirement essentially provides a check on the heightened potential for abuse posed by the summary contempt power by providing an opportunity for the contemnor to apologize or to defend or explain the contumacious behavior. The opportunity to apologize, defend or explain that we require, allows the contemnor

---

[13]RCW 7.21.050(1).

[14]*State v. Hobble*, 126 Wn.2d at 296.

[15]*In re Contempt in State v. Dewerth*, 139 Wis.2d 544, 558-59, 407 N.W.2d 862 (1987).

to speak in mitigation of the misconduct which the court has already determined.[16]

The Wisconsin cases are particularly pertinent authority because our contempt statute was patterned after Wisconsin's.[17] We adopt the reasoning reflected in the cited Wisconsin cases. The opportunity to speak in mitigation of the contempt must be given after the court makes the finding of contempt.

Here, the court gave Templeton an opportunity to avoid being found in contempt. This does not satisfy the procedural requirement that the contemnor must be given an opportunity to speak in mitigation after the finding of contempt. The court not only failed to give Templeton an opportunity to speak in mitigation, but also denied Templeton's attorney's request for an opportunity to speak. The error was not harmless and the issue is not moot, because Templeton has not yet served the entire 30-day sentence. The sentence must therefore be set aside.

Because the sentence is vacated and Templeton will now have an opportunity to address the court about the length of the sentence, it is unnecessary for us to address Templeton's additional argument that 30 days was an excessive sentence.

The order of contempt is remanded to the trial court for entry of written findings. We vacate the 30-day sentence and remand for a new hearing on the appropriate sanction for contempt after Templeton is given an opportunity to speak in mitigation.

[16]*In re Finding of Contempt in State v. Kruse*, 194 Wis.2d 418, 435-36, 533 N.W.2d 819 (1995) (citation omitted).

[17]*See* Br. of Appellant app. D (Memorandum from Harry Reinert, Counsel, House Judiciary Committee to Members, House Judiciary Committee (Sept. 20, 1988)). *See also State v. Herzog*, 69 Wn. App. 521, 526, 849 P.2d 1235, *review denied*, 122 Wn.2d 1021 (1993).

AGID, A.C.J., and APPELWICK, J., concur.