# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Respondent,<br><br>       v.<br><br>JONATHAN LAWRENCE DENNINGTON,<br><br>               Appellant. | DIVISION ONE<br><br>No. 79160-5-I (consol. with No. 79161-3-I and No. 79162-1-I)<br><br>PUBLISHED OPINION |

DWYER, J. — Jonathan Dennington appeals from an order holding him in contempt of court and sanctioning him to 30 days of confinement. Because the trial court had the authority to hold Dennington in contempt, but did not provide Dennington his statutorily required opportunity to speak in mitigation of his contempt, we affirm the finding of contempt, reverse the sanction imposed, and remand for imposition of the appropriate contempt sanction after Dennington is given the opportunity to speak in mitigation.

I

The State charged Dennington with multiple offenses related to vehicle theft. To ensure sufficient time to conduct witness interviews, defense counsel filed a motion to continue Dennington's trial date, which the court granted over Dennington's personal objection.

Following the ruling, the prosecutor and the court briefly discussed proposed amendments to the information. Because the court's calendar had 108

cases and the courtroom was full of people awaiting their hearings, the trial judge asked the prosecutor to wait until another time to seek amendments. The prosecutor agreed.

At the close of this discussion, Dennington made a reference to the prosecutor's personal appearance, stating that "she needs to lose weight somehow." This comment prompted the following exchange:

> **The Court:** Let's go. Sir, you need to watch your conduct in my courtroom. Come back here, Mr. Dennington.[1]
> **[Dennington]:** I don't respect you. I don't respect the court.
> **The Court:** I got it—
> **[Dennington]:** I don't respect the liars that you entertain in your court.
> **The Court:** But your conduct in my courtroom is important.
> **[Dennington]:** Do something about it. I don't care about that.[2]
> **The Court:** All right, I'm going to find you in contempt of court, sir.
> **[Dennington]:** Thank you.
> **The Court:** I'm going to add 30 days to your sentence, whatever it may be.
> **[Dennington]:** Add it to my sentence. I'm not guilty.
> **The Court:** You need to do an order on that.
> **[Prosecutor]:** Thank you, your Honor.
> **[Defense Counsel]:** Your Honor, I'll just—
> **The Court:** It wasn't to his sentence. You may note your objection, but your client's conduct in this courtroom is unacceptable, so he's got 30 days in contempt of court.

Subsequently, the trial judge entered written findings of fact and conclusions of law regarding the exchange, noting that Dennington's tone throughout was disrespectful and dismissive. There was no further discussion on the record regarding the contempt order.

---

[1] At this point Dennington had turned his back to the trial judge and began walking away. After being called back by the judge, he returned to the bar.

[2] At this point, Dennington again turned his back to the trial judge and began walking away.

Dennington later pled guilty to two counts of taking a motor vehicle without permission in the second degree under separate cause numbers. A sentence within the standard range was then imposed.

Dennington now appeals from the order holding him in contempt of court.

II

Dennington contends that the contempt order must be reversed because: (1) his actions did not constitute contempt of court under RCW 7.21.010, and (2) he was never given the statutorily required opportunity to speak in mitigation after the trial court held him in contempt.[3]

A

"A court's authority to impose sanctions for contempt is a question of law, which we review de novo." In re the Interest of Silva, 166 Wn.2d 133, 140, 206 P.3d 1240 (2009). "Punishment for contempt of court lies within the sound discretion of the trial court." State v. Dugan, 96 Wn. App. 346, 351, 979 P.2d 885 (1999) (citing Schuster v. Schuster, 90 Wn.2d 626, 630, 585 P.2d 130 (1978));

---

[3] Dennington also contends that the contempt order violated his right to freedom of speech as protected under the First Amendment to the United States Constitution. This contention is specious. While both the state and federal constitutions protect the right to freedom of speech, U.S. CONST. amend. I; WASH. CONST. art. I, § 5, not every limitation on free expression violates that right. It has long been recognized by the United States Supreme Court that an individual's freedom of speech may be impaired through the exercise of the judicial contempt power when "the utterances in question are a serious and imminent threat to the administration of justice." Craig v. Harney, 331 U.S. 367, 373, 67 S. Ct. 1249, 91 L. Ed. 1546 (1947). As the Ninth Circuit noted, an individual's first amendment rights "must be balanced against the need for order" in a courtroom. Hawk v. Cardoza, 575 F.2d 732, 735 (9th Cir. 1978).

Dennington does not cite to a single case wherein a court held that a contempt sanction premised on behavior similar to Dennington's violated the contemnor's first amendment rights. Dennington turned his back on the judge multiple times and explicitly denounced the court as untrustworthy in a busy court room, delaying the court's consideration of other matters. This conduct plainly presented a threat to the proper administration of justice, as it delayed court proceedings and presented the risk that, if left unchecked, it would encourage others who were witness to Dennington's conduct to distrust the court's impartiality or integrity or to disrupt the proceedings in a similar fashion.

see also Templeton v. Hurtado, 92 Wn. App. 847, 852, 965 P.2d 1131 (1998) (citing In re Marriage of Matthews, 70 Wn. App. 116, 126, 853 P.2d 462 (1993)). Thus, when "reviewing a trial court's finding of contempt, an appellate court reviews the record for a clear showing of abuse of discretion." Templeton, 92 Wn. App. at 852 (citing In re Marriage of James, 79 Wn. App. 436, 439-40, 903 P.2d 470 (1995)). An abuse of discretion occurs when a trial court exercises its discretion in an unreasonable manner or bases it on untenable grounds or reasons. State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995). To ensure an adequate basis for appellate review of a contempt order, "a trial court must be sure written findings are entered, either by delegating the task to opposing counsel or writing them out personally." Templeton, 92 Wn. App. at 853.

"The authority to impose sanctions for contempt may be statutory, or under the inherent power of constitutional courts."[4] State v. Hobble, 126 Wn.2d 283, 292, 892 P.2d 85 (1995). To be valid, contempt orders must comply with constitutional procedural due process requirements, specifically by providing contemnors with notice and an opportunity to be heard.[5] Burlingame v. Consol. Mines & Smelting Co., 106 Wn.2d 328, 332, 722 P.2d 67 (1986) (citing Hovey v. Elliott, 167 U.S. 409, 414-15, 17 S. Ct. 841, 42 L. Ed. 215 (1897)).

---

[4] However, "courts may not exercise their inherent contempt power '[u]nless the legislatively prescribed procedures and remedies are specifically found inadequate.'" In re Dependency of A.K., 162 Wn.2d 632, 647, 174 P.3d 11 (2007) (alteration in original) (quoting Mead Sch. Dist. No. 354 v. Mead Ed. Ass'n, 85 Wn.2d 278, 288, 534 P.2d 561 (1975)). Herein, the trial court relied on its statutory authority to hold Dennington in contempt of court and did not find its statutory authority inadequate. Therefore, we need not further address the court's inherent contempt authority.

[5] The notice requirement is significant "because it protects an individual's right to be heard." Burlingame v. Consol Mines & Smelting Co., 106 Wn.2d 328, 332, 722 P.2d 67 (1986) (citing Hovey v. Elliott, 167 U.S. 409, 415, 17 S. Ct. 841, 42 L. Ed. 215 (1897)).

In Washington, a court's statutory contempt authority is set forth in chapter 7.21 RCW. Contempt of court is defined as intentional

> (a) Disorderly, contemptuous, or insolent behavior toward the judge while holding the court, tending to impair its authority, or to interrupt the due course of a trial or other judicial proceedings;
> (b) Disobedience of any lawful judgment, decree, order, or process of the court;
> (c) Refusal as a witness to appear, be sworn, or, without lawful authority, to answer a question; or
> (d) Refusal, without lawful authority, to produce a record, document, or other object.

RCW 7.21.010(1).

"Contempt may be direct, occurring in the court's presence, or indirect, occurring outside of court."[6] In re Dependency of A.K., 162 Wn.2d 632, 644, 174 P.3d 11 (2007) (citing Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 827 n.2, 114 S. Ct. 2552, 129 L. Ed. 2d 642 (1994)). Contempt sanctions may be either remedial—"imposed for the purpose of coercing performance when the contempt consists of the omission or refusal to perform an act that is yet in the person's power to perform"—or punitive—"imposed to punish a past contempt of court for the purpose of upholding the authority of the court." RCW 7.21.010(2)-(3).

Courts have statutory authority to summarily order both remedial and punitive sanctions for direct contempt "if the judge certifies that he or she saw or heard the contempt," but "only for the purpose of preserving order in the court and protecting the authority and dignity of the court." RCW 7.21.050(1)[7]; see

---

[6] Because the conduct for which Dennington was held in contempt in this case occurred in the presence of the superior court judge we need not address the legal standards pertaining to indirect contempt.

[7] RCW 7.21.050, authorizing the summary imposition of sanctions, states in full:

also Hobble, 126 Wn.2d at 293; Sanchez v. Rose, No. 36279-5-III, slip op. at 4-5

(Wash. Ct. App. Mar. 10, 2020),

http://www.courts.wa.gov/opinions/pdf/362795_pub.pdf.  "When contempt occurs

in the presence of the court, '[t]here is no prosecution, no plea, nor issue upon

which there can be a trial.'"  Hobble, 126 Wn.2d at 297 (alteration in original)

(internal quotation marks omitted) (quoting State v. Buddress, 63 Wash. 26, 32,

114 P. 879 (1911)).  The facts of the contempt are not subject to dispute and

summary proceedings are appropriate because the judge has personal

knowledge of the offensive conduct occurring in his or her presence.  Hobble,

126 Wn.2d at 297.

However, for summary contempt orders, RCW 7.21.050(1) requires that

"[t]he person committing the contempt of court shall be given an opportunity to

speak in mitigation of the contempt unless compelling circumstances demand

otherwise."[8]  Providing an opportunity to avoid being found in contempt does not

---

(1) The judge presiding in an action or proceeding may summarily impose either a remedial or punitive sanction authorized by this chapter upon a person who commits a contempt of court within the courtroom if the judge certifies that he or she saw or heard the contempt. The judge shall impose the sanctions immediately after the contempt of court or at the end of the proceeding and only for the purpose of preserving order in the court and protecting the authority and dignity of the court. The person committing the contempt of court shall be given an opportunity to speak in mitigation of the contempt unless compelling circumstances demand otherwise. The order of contempt shall recite the facts, state the sanctions imposed, and be signed by the judge and entered on the record.

(2) A court, after a finding of contempt of court in a proceeding under subsection (1) of this section may impose for each separate contempt of court a punitive sanction of a fine of not more than five hundred dollars or imprisonment for not more than thirty days, or both, or a remedial sanction set forth in RCW 7.21.030(2). A forfeiture imposed as a remedial sanction under this subsection may not exceed more than five hundred dollars for each day the contempt continues.

[8] This statutory requirement also ensures the proper protection of a contemnor's procedural due process right to the opportunity to be heard in a summary contempt proceeding. However, neither the Washington Constitution nor the United States Constitution sets forth a right

satisfy this statutory mitigation requirement. Templeton, 92 Wn. App. at 855.

"The opportunity to speak in mitigation of the contempt must be given after the

court makes the finding of contempt." Templeton, 92 Wn. App. at 855. This is so

because the opportunity to mitigate does not enable the contemnor to avoid the

finding of contempt but, rather, permits a contemnor to apologize for, defend, or

explain the misconduct that the court has already determined constitutes

contempt in an effort to mitigate the sanctions to be imposed. See Templeton,

92 Wn. App. at 854-55 (quoting In re Finding of Contempt in State v. Kruse, 194

Wis.2d 418, 435-36, 533 N.W.2d 819 (1995)).

Our Supreme Court briefly considered the mitigation requirement in

Hobble. Therein, the trial court found a witness in contempt of court for refusing

to answer a question while testifying. Hobble, 126 Wn.2d at 288. After making

this finding, the trial court did not immediately impose sanctions in order to allow

the contemnor's counsel an opportunity to argue as to which sanctions, if any,

should be imposed. Hobble, 126 Wn.2d at 288. At a later hearing to determine

the appropriate sanctions, the trial court asked the contemnor if he had anything

he wished to say on the subject. The contemnor answered in the negative.

Hobble, 126 Wn.2d at 289, 296. The trial court also heard argument from

contemnor's counsel regarding the appropriate sanctions. Hobble, 126 Wn.2d at

288-89, 296. On review, the Supreme Court concluded that the trial court's

actions, specifically asking the contemnor if he had anything he wished to say

---

to speak in mitigation prior to imposing sanctions for direct contempt. Thus, the right to speak in
mitigation, while ensuring the protection of a contemnor's due process right to the opportunity to
be heard, is a statutory right. RCW 7.21.050.

7

regarding the sanction and permitting counsel to present arguments regarding the appropriate sanction, satisfied the statutory requirement to provide the contemnor the opportunity to speak in mitigation.[9]  Hobble, 126 Wn.2d at 296.

The proper remedy when a contemnor was not given the opportunity to speak in mitigation is vacation of the contempt sanction and remand for a new hearing on the appropriate sanction after the contemnor is given the opportunity to speak in mitigation.  See Templeton, 92 Wn. App. at 855 ("We vacate the 30-day sentence and remand for a new hearing on the appropriate sanction for contempt after Templeton is given an opportunity to speak in mitigation.").

B

Dennington first contends that the trial court lacked the statutory authority to hold him in contempt because his conduct did not meet the statutory definition of contempt.  We disagree.

Dennington asserts that his behavior did not threaten order in the courtroom or threaten the court's authority and dignity by interrupting proceedings, and that the trial court therefore lacked the statutory authority to hold him in contempt.  This is so, he asserts, because the judge had stated, in reference to Dennington's case, "that will conclude this matter," and such a statement ended court proceedings.  This analysis is plainly wrong.  Merely

---

[9] Thus, the statutory right to speak in mitigation following a contempt finding is akin to the statutory right to allocution prior to sentencing in criminal cases—which provides convicted offenders the opportunity to plead for mercy in sentencing.  See State v. Lord, 117 Wn.2d 829, 897, 822 P.2d 177 (1991), abrogated on other grounds by State v. Schierman, 192 Wn.2d 577, 438 P.3d 1063 (2018).  "Failure by the trial court to solicit a defendant's statement in allocution constitutes legal error."  State v. Hughes, 154 Wn.2d 118, 153, 110 P.3d 192 (2005), overruled in part on other grounds by Wash. v. Recuenco, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006).  Similarly, it is error for a trial court to fail to solicit a contemnor's statement in mitigation following a summary finding of contempt.  See Hobble, 126 Wn.2d at 296.

because Dennington's matter had concluded does not mean that the court was no longer in session. As long as the judge is on the bench and court is in session, court proceedings continue regardless of the specific matter being considered. Contemptuous behavior occurring while court is in session, even when the court is not actively addressing the contemnor's case, is sanctionable. See RCW 7.21.050.

Dennington's actions—rudely commenting on the prosecutor's physical appearance and, when admonished to adjust his behavior, turning his back on the judge and explicitly and rudely telling the judge that he did not respect the court or others involved in his case—plainly presented a direct threat to the authority and dignity of the court and to maintaining proper decorum during court proceedings. Indeed, the court had 108 matters pending on its docket. Thus, Dennington's actions delayed other proceedings and were likely perceived by the numerous attorneys and defendants in the busy courtroom. Dennington's behavior, left unaddressed, could have encouraged others to similarly disrespect the court or similarly disrupt proceedings. "It is the duty of the trial court to see that proper decorum is observed."[10] State v. Elwood, 193 Wash. 514, 515, 76 P.2d 986 (1938). Thus, the judge had—and properly exercised—the statutory authority to find Dennington in contempt based on his behavior.

---

[10] Because judges are responsible for maintaining decorum in the courtroom to ensure an orderly environment for the administration of justice, they plainly must be empowered to require proper standards of conduct from *all*, as opposed to only some, persons within the courtroom when court is in session.

C

Dennington next contends that after he was held in contempt he was denied his right to speak in mitigation of that contempt. His contention has merit.

The record herein establishes that the trial court did not present Dennington with an opportunity to speak in mitigation of his contempt, as required by RCW 7.21.050. Following the oral finding of contempt, the court engaged in the following colloquy with Dennington, the prosecutor, and defense counsel:

> **The Court:** All right, I'm going to find you in contempt of court, sir.
> **[Dennington]:** Thank you.
> **The Court:** I'm going to add 30 days to your sentence, whatever it may be.
> **[Dennington]:** Add it to my sentence. I'm not guilty.
> **The Court:** You need to do an order on that.
> **[Prosecutor]:** Thank you, your Honor.
> **[Defense Counsel]:** Your Honor, I'll just—
> **The Court:** It wasn't to his sentence. You may note your objection, but your client's conduct in this courtroom is unacceptable, so he's got 30 days in contempt of court.

This exchange was insufficient for two reasons. First, the court failed to provide Dennington with notice of the peril he faced as a result of the summary contempt finding—statutorily prescribed as 30 days confinement and a $500 fine. RCW 7.21.050(2). The court must provide this information to properly effectuate the statutory right to speak in mitigation for the purpose of ensuring the protection of the procedural due process rights to notice and an opportunity to be heard. See State v. Jordan, 146 Wn. App. 395, 404, 190 P.3d 516 (2008) (noting that imposing sanctions prior to permitting contemnor to speak failed to comply with RCW 7.21.050(1) and constitutional due process requirements). Simply put, a

10

contemnor cannot be said to have had a full opportunity to speak in mitigation unless the contemnor is aware of the peril the contemnor seeks to mitigate.

Second, the court never asked Dennington if he had anything he wished to say to mitigate his contempt. Following the summary contempt finding, the court was statutorily required to offer Dennington the opportunity to allocute in mitigation of his contempt before imposing sanctions.[11] RCW 7.21.050(1); see Hobble, 126 Wn.2d at 296. Here, the court erred by not doing so.[12]

Dennington was denied his statutorily required opportunity to speak in mitigation of his contempt. The proper remedy is vacation of the contempt sanction and remand for a new hearing on the appropriate sanction to be imposed after Dennington is given the opportunity to speak in mitigation. See Templeton, 92 Wn. App. at 855 ("We vacate the 30-day sentence and remand for a new hearing on the appropriate sanction for contempt after Templeton is given an opportunity to speak in mitigation.").

We affirm the superior court's finding that Dennington was in contempt. We reverse the sanction imposed and remand for further proceedings.

---

[11] We reject the State's assertion that Dennington saying "thank you" immediately following the court's announcement that he was in contempt constituted his opportunity to speak in mitigation. Again, to properly ensure the protection of contemnors' due process rights to notice and an opportunity to be heard, full compliance with RCW 7.21.050 requires judges to inform contemnors of their right to speak in mitigation and provide them with an opportunity to do so. See Hobble, 126 Wn.2d at 296.

[12] The State asserts, in the alternative, that the court's failure to provide Dennington with the opportunity to speak in mitigation was excused by compelling circumstances. The superior court's findings and conclusions do not support this contention. To ensure an adequate basis for appellate review, "a trial court must be sure written findings are entered, either by delegating the task to opposing counsel or writing them out personally." Templeton, 92 Wn. App. at 853. The contempt order entered herein does not set forth any circumstances the judge believed compelled him to deny Dennington his opportunity to speak in mitigation.

Affirmed in part; reversed in part, and remanded.

_____Dwyer, J._____

WE CONCUR:

_____          _____Mann, ACJ._____